The Baltimore and Susquehanna Rail-road Co. *vs.* Samuel Faunce and J. D. Passmore.—*December,* 1847.

A party cannot recover money, voluntarily paid, with a full knowledge of all the facts, although no obligation to make such payment existed.

A party making a payment in the mistaken belief, that the sum paid was the true balance appearing due from an account before him, and not noticing a deduction therefrom, paid a larger sum than he intended, may recover the excess.

A payment cannot well be said to be voluntary when it is made in consequence alone of a false view of the facts.

The subsequent discovery of the error destroys the whole basis of the agreement, and the parties are restored to their original condition and rights.

Where the agent of a rail-road company agreed to pay only what the engineer of the company certified, and supposed he was paying no more, while in fact he did pay more to a contractor, the company may recover the sum erroneously paid.

Where the defendant's claim was $2,436 10, and his agent intending to pay that sum, erroneously and unconsciously paid $3,306 10, which payment was made up of $1,006 in small notes illegally issued by the plaintiff, and $2,300 10 in current money, the defendant received the whole as money, and upon immediate demand, refused to return the small notes, or the overpayment. In an action for money had and received, the plaintiff may show the error; the defendant cannot defend himself upon the ground that the small notes were illegally issued.

The law properly withholds its aid when parties ask to enforce an illegal contract; but this is not such a case. The plaintiff does not ask to enforce an illegal contract, nor recover against the defendant for refusing to violate the law. The action is brought to correct a mistake.

Where a municipal corporation authorized one of its inhabitants to issue small notes as currency, in their name, but for his benefit, and upon his responsibility; and he afterwards, by will, directed his estate to be sold *for the payment of such notes*, the notes being issued in violation of law, a bill, filed to coerce the sale, was held to be an attempt to enforce a void contract, and dismissed.

In an action for money had and received, any thing received by the defendant as money, will entitle the plaintiff to recover; as a bond, a note, a credit in account, land received and acknowledged as money, and a mixed, erroneous, payment of legal and illegal notes—there being circumstances to show that the defendant received money for the illegal notes.

APPEAL from *Baltimore* County Court.

This was an action of *assumpsit*, brought by the appellants against the appellees. The defendants pleaded the general issue.

1ST EXCEPTION. The plantiffs offered in evidence the contract between the appellees and the *York and Maryland Line R. R. Co.* for work, to be done by the said appellees under said contract, and the final estimate thereof by *Isaac Trimble*, engineer thereof for the time being, viz:

| | | | | | |
|---|---|---|---|---|---|
| For money paid by them, | . | . | . | . $ | 129 27 |
| For work on bridge, sect. 65, | | . | . | . | 12,586 25 |
| For work on graduation, sect. 65, | . | | . | . | 11,926 56 |
| | | | | | $24,642 08 |

From the graduation work, the estimate deducted the sum of $870, for work done on the section by *Toy* to that amount.

And proved, by *Robert S. Hollins*, that he was the secretary of the plaintiffs; that the plaintiffs had agreed with the said *Yk. and Md. Line R. R. Co.* to make on its behalf the payments to become due by it on said contract; that he, as agent for the plaintiffs, received from *Mr. Trimble*, the engineer for the time being, the final estimate of the work done by the defendants under their contract, after which, he was called upon, at the office of the plaintiffs, by the defendant, *Passmore*, in regard to the settlement of the claims of the defendants under their contract; that he shewed him the final estimate, which *Passmore* examined and returned to the witness, under the remark, that the deduction for work done by *Toy* was too great; that the next morning, the defendant, *Faunce*, called at the office of the plaintiffs and examined the final estimate, and handed it back to the witness, with a request, that he would state what amount was due to the defendants: and that thereupon, the witness made out a statement of what was due the defendants, intending to state the same according to the said final estimate—which statement he now produces, and which showed a balance due the defendants, $3,306 10.

The paper also showed the payments to the defendants to be—

| | | | | | |
|---|---|---|---|---|---|
| Small notes, | . | . | . | . | $1,006 00 |
| 3 months, | . | . | . | . | 1,300 10 |
| 6 months, | . | . | . | . | 1,000 00 |
| | | | | | $3,306 10 |

And that in making said statement, he omitted, by mistake, to make a deduction of $870, for work done by *Toy*, which deduction was made by the final estimate; and that the balance, which he stated to the defendants to be due to them, was erroneous to that extent; that on the preceding morning, the defendants both came to the office of the plaintiffs, and that the final estimate and the statement above mentioned were put into their hands; that they were some time looking over

them, in the course of which the defendant, *Faunce*, asked the defendant, *Passmore*, whether the balance would be sufficient to pay their debts: and upon his replying in the affirmative, they then both declared their willingness to settle, after which, the witness paid them, on behalf of the plaintiffs, the said balance of $3,306, (which was, by his mistake, $870 too much, as already stated,) and obtained their receipts therefor and their release, under seal, to the *Yk. and Md. Line Rail-road Co.* for the work done.

The plaintiffs further proved, by the said witness, that he had no authority from the plaintiffs to make any settlement, except upon the basis of the said final estimate; that he would not have made the payment of $3,306 10, had he been aware of his mistake, in failing to deduct the $870, which is deducted by the final estimate; that on the same day on which said payment was made, and shortly after the defendants had left the office of the plaintiffs, he discovered, by a conversation with *Mr. Trimble*, that he had made the mistake above mentioned; and thereon proceeded with said *Trimble*, immediately, in search of the defendants; in the course of an hour, they found the defendant, *Faunce*, and stated to him the mistake that had been committed by this witness, and demanded the return of the money, to which his only reply was, that he was not acquainted with the work done, but would find *Passmore*, who was out paying his bills, and bring him to the office, and there examine into the matter, upon which the witness returned to the office; and after waiting there some time in vain for the defendants, proceeded again in search of them, in company with *Mr. Charles Howard*, the president of the plaintiffs, and met them—and the subject of the mistake again brought up, and *Mr. Howard* offered if the over-payment were returned, to cancel the final release and receipts, and take a receipt on account for the residue;—but that this was refused, and the defendants declined returning the money, and assigned no reason therefor, so far as the witness recollects.

The defendants thereupon, to sustain the issue on their part, proved by the cross-examination of the same witness,

that he had no personal knowledge of the extent of the work done by the defendants under their contract. And further offered to prove by him, that the payment which he made to the defendants, as already given in evidence by him, and as shown by the papers so offered in evidence by the plaintiffs, consisted of the following, viz:

In small notes, issued by the plaintiffs, of the denomination of one and two dollars, and of the form herewith exhibited—to the amount of $1,006; and in the promissory notes of the plaintiffs, of $100 each, some payable at three, some at six months, and of the form herewith exhibited; as is shown by said papers, so offered in evidence by the plaintiffs as aforesaid.

To the admissibility of which evidence, the plaintiffs objected. But the court (ARCHER, C. J., and LE GRAND, A. J.,) overruled said objection, and allowed said evidence to go to the jury. The plaintiffs excepted.

2D EXCEPTION. The plaintiffs, to support the issue on their part, gave in evidence the facts already stated in the first bill of exceptions. And the defendants, to support the issue on their part, also proved the facts which were given in evidence by them, as already stated in the same bill.

Thereupon, the plaintiffs proved that all the $100 notes by the plaintiffs had come in and been paid; and that all their $2 notes had likewise been redeemed; but that there still remained out about $230 of their $1 notes.

The defendants further proved that an agreement has been made with the *Citizens Bank* for the redemption of the $1 and $2 notes of the plaintiffs; and that they circulated as money in the community.

The plaintiffs then prayed the court to instruct the jury:—

1st. If the jury find, from the evidence, that at the time of the settlement between the defendants and the witness, *Hollins*, the said witness, exhibited to them the final estimate of the work done, and the sums to be paid for it, which has been offered in evidence; and that the said witness intending and agreeing to pay the defendants for the work done, according to the said

final estimates, and having no authority, as the agent of said company to pay them in another mode, or to make any additions or deductions from the sums as allowed or charged the defendants by said estimates; and intending to pay the defendants for said work according to the said estimates, &c. the allowances and deductions made thereby, did, by mistake, omit to make the deduction of $870 appearing on the said estimate for graduation, as a deduction properly chargeable to and to be made as against the defendants from the amount fixed by said estimate; and that said *Hollins* settled with them, and paid them by mistake, the whole amount of the sum allowed by said estimate for graduation, without deducting said $870, and took from said defendants their receipts and releases, which have been offered in evidence. And if the jury also find, that after said payment by mistake, the said witness, with the president of the plaintiffs, called upon the defendants and made known to them the said mistake, and demanded of them the return of the said amount, so over-paid by mistake, and the defendants, upon such demand, refused to return the said over-payment, and have never since returned it to the plaintiffs—then the plaintiffs are entitled to recover the same sum of $870, with such allowance for interest as the jury may deem it proper to make.

2d. If the jury find the facts stated in the plaintiffs' *first prayer*, then the plaintiffs are entitled to recover—notwithstanding the jury may find, from the evidence, that the payment was made in the $100 notes, and in the $1 and $2 notes of the plaintiffs, as proved by the witness, *Hollins.*

3d. If the jury find that the payment was made to the defendants by the witness, *Hollins,* as stated by him in his evidence; that there was no illegality in the said payment, except as to the $1 and $2 notes, so paid out by said witness; and that the payment of the $100 notes, as proved by him, was not illegal.

4th. If the jury find the facts stated in the plaintiffs' first

prayer, then the defendants are estopped from alleging that they had not money in their hands, to the extent of the over-payment, to respond to the plaintiffs in this action.

5th. If the jury find the facts stated in the plaintiffs' first prayer, and that no application was made, either by the plaintiffs or the defendants, of the payment made by the said *Hollins* to the defendants, then in the proper and legal application of the same, the $1 and $2 notes paid to them, as stated by said *Hollins* in his evidence, are first to be applied to the payment of the sum of debt, on account of which, they were so paid to the defendants by said *Hollins;* and the plaintiffs are entitled to recover for the said over-payment by mistake.

6th. If the jury find, from the facts stated in the plaintiffs' first prayer, and so find that the payment to the defendant by the witness, *Hollins,* was, in part, made in the $1 and $2 notes of the plaintiffs, as stated by the witness, *Hollins,* then said $1 and $2 notes, so paid to and received by the defendants, were in law applicable to the payment of the debt, on account of which, it was so paid to and received by the defendants, and was, under the facts stated in the plaintiffs' first prayer, money in their hands for the payment of said debt.

7th. That if the jury find the facts stated in the plaintiffs' first prayer, and that the payment so made to the defendants by the witness, *Hollins,* was made, as stated by said *Hollins,* in the $100 and $1 and $2 notes of the plaintiffs; and if the jury also find that the said defendants had in fact applied, before the· said demand made by the president of the plaintiffs, the said $1 and $2 notes of the plaintiffs so received by them, in whole, or in part, to the payment of the said debt on account of which they were so received, then the plaintiffs are entitled to recover.

8th. That if the jury find the fact stated in the plaintiffs' first prayer, and that the payment so made to the defendants by the witness, *Hollins,* was made, as stated by said witness, in the $100 and $1 and $2 notes of the plaintiffs; and that the said defendants, after the receipt of the same, had paid away

in discharge of their debts, or recovered the money on the said $1 and $2 notes, or any part of them, before the bringing of the action, then the plaintiffs are entitled to recover to the extent of the said payment away, in discharge of their debts by said notes, or of the money received on them by the defendants before the bringing of this action.

9th. That if the jury find the facts stated in the plaintiffs' first prayer, and if they also find that the payment to the defendants by the witness, *Hollins*, was made in part in the $100 notes of the plaintiffs, as stated by said *Hollins* in his evidence, and that the defendants expressly agreed to receive said $100 notes in payment of the debts, on account of which, they were paid to and received by the defendants, then the said $100 notes so received and agreed to be taken in payment by the defendants, were in law a payment of said debt; and that they were money in the hands of the defendants, by the force of such receipt and agreements, to respond to the plaintiffs in this action; and that the receipts and release of the defendants, for or on said payment, which have been offered in evidence, are evidence that the defendants did expressly agree to receive the said $100 notes in payment of said debt.

10th. That if the jury find the facts stated in the plaintiffs' first prayer, and if they also find that the said payment, made to the defendants by the witness, *Hollins*, as stated by the witness, *Hollins*, in part in the $1 and $2 notes of the plaintiffs, and that the said defendants, having received and given receipts and release, as before stated, did in fact apply the same notes to the payment of the debt, on account of which, they were so received and applied, did in law amount to the payment of the said debt, to the extent to which they applied and covered said debt.

The court (ARCHER, C. J., and LE GRAND, A. J.,) refused to grant said prayers and each of them—to which refusal, as to said prayers and each of them, the plaintiffs excepted.

The verdict and judgment of the court below being in favor of the defendants, the plaintiffs appealed to this court.

The cause was argued before DORSEY, CHAMBERS, MA-
GRUDER and MARTIN, J.

By CAMPBELL and MCMAHON for the appellants, and

By NELSON for the appellees.

CHAMBERS, J., delivered the opinion of this court.

Two questions arise on this record: First, whether the plain-
tiffs can recover back money, paid under such circumstances of
knowledge or means of information as existed in this case?
And secondly, if entitled in other respects, whether the plain-
tiff is precluded by reason of the character of the notes in
which the payment was in part made?

The facts upon which the opinion of the court was asked,
are, that the payment was made in the mistaken belief that
the sum paid was the true balance appearing due by the final
estimate, and that the agent who made the payment for the
plaintiffs intending to pay that balance, and not noticing the
deduction of $870, paid a sum larger by that amount than he
intended.

It is rightly said, that a party cannot recover money volun-
tarily paid with a full knowledge of all the facts, although no
obligation to make such payment existed.  If informed of the
law which exempts him, he must abide the consequences of
his folly, in abandoning the protection it afforded him—if igno-
rant, he was bound to acquire information.

It is regarded as a gift without consideration.  But full
knowledge of the facts is here negatived.  The statement in the
bill of exception assumes, and the testimony of the witness
shows, that he made the payment, believing at the moment of
making it, that the engineer, whose estimates he was bound to
regard, had certified the sum to be due which was actually
paid.

Then it is urged that ample means were at hand to obtain
full and accurate information, and many cases have been re-
ferred to as establishing the proposition, that a recovery cannot

be had where the party paying has access to information, and by his own laches neglects to acquire it.

Certainly some of the authorities seem to countenance such a doctrine; but, we think, the opposite opinion best accords with the plainest principles of justice, and has the weight of authority to sustain it. The case of *Lucas and others,* and *Worwick,* 1 *Mod. & Rob.* 293, in many particulars, resembles this case.

The defendant had a claim against the plaintiffs for work and labor, amounting as defendant alleged, to £142; the plaintiffs disputed certain items, and admitted a balance of only £97 ; at defendant's request, *Lucas,* one of the plaintiffs, paid £20 on account. The defendant afterwards met *Lucas* and agreed to abandon the disputed items. Whereupon, *Lucas* paid him £97, forgetting the previous payment of £20; but, almost immediately after, notified the defendant of the mistake, and demanded the return of the £20 ; and on his refusal, the action was brought to recover that sum.

The case was fully discussed before *Denman* and *Baron Bolland,* who held that as the money was paid by mistake in the hurry of business, it might be recovered back as received to the use of the plaintiffs.

The case of *Kelly vs. Solari,* 9 *M. & W.* 54, was fully considered. There the parties paying had at one time a knowledge of the fact, the forgetfulness of which subsequently induced them to make the payment. The Chief *Baron,* at *nisi prius,* instructed the jury, that the previous knowledge or means of knowledge would prevent the recovery ; but on argument, he united with all the other *Barons* in the opinion, that there must be knowledge existing in the mind at the time of the payment. Of what avail is it, in any view of justice or sound sense, that a man once knew or had means to know a fact, if, at the moment when alone, such knowledge is practically useful, he is actually ignorant of it?

A payment cannot well be said to be made voluntarily when it is made in consequence alone of a false view of facts. The assent is only induced by the conviction then prevailing in the

mind, that the particular fact existed, and is scarcely to be distinguished from an assent or agreement to pay on the con-dition that the fact did exist.

The subsequent discovery of the error destroys the whole basis of the agreement, and the parties are restored to their original condition and rights. Of what avail is it, that indus-try and vigilance might have procured the information? Still the party has done an act he did not intend to do, and did not know or believe he was doing. In this case, the agent as-sented and agreed to pay only what the engineer certified; he supposed he was paying no more when he delivered the notes to defendants, and his volition was no more involved in any amount beyond, than it would have been had he paid them a bank note of $1,000, misreading, and intending it to be a note of $100.

In the case of *Bell vs. Gardner,* 4 *Man. & Gran.* 11, found in 43 *Eng. Com. Law,* 16, the Judges of the Common Pleas, unanimously adopt the principle of *Lucas & Worwick,* and applying it to the case before them held it to be a good de-fence to a suit on a promissory note, that it had been given to the plaintiff to discharge a debt supposed to be due; but which, owing to a fact then unknown to defendant, was not legally recoverable, although the defendant had ample means of knowing the fact.

We are therefore of opinion, that there was nothing in the facts of this case as stated in the exception, which would pre-vent the plaintiffs from recovering, because of the alleged vol-untary character of the payment with the means of knowing and correcting the error under which it was made.

We will now consider whether the recovery is barred by reason that the payment was made in the particular notes which the defendants received.

It has been denied in the argument that these small notes were illegally issued. We are inclined to think they are pro-hibited; but do not find it necessary to express a more decided opinion upon that point—assuming the small notes to have been issued illegally, how will the case stand?

The plaintiffs' agent paid away $3,306 10, being more by $870 than was due, and more than he designed to pay; of the sum paid, $1,006 were in small notes illegally issued by the plaintiffs, the residue, $2,300 10 in good paper, the defendants received the whole as money, and as the evidence shows have used the notes as money in a few hours after the payment.

The agent having discovered his mistake, called on the defendants to return him the notes to the amount of $870, the sum overpaid by mistake, and they refuse to return the notes or account in any manner for the sum overpaid, and now contend that principles of public policy forbid the plaintiffs from enforcing such demand.

We cannot yield our assent to a proposition which would sanction such a result. The law properly and consistently withholds its aid when parties ask to enforce an illegal contract—all are presumed to know the law, and if a contract be made to violate it, whether it be a contract to perpetrate a crime, *malum in se,* such as murder or arson, or to violate a municipal enactment, such as the act prohibiting the issue of small notes, and a remedy is sought either to enforce such contract or to obtain compensation for a breach of it, the parties are properly told the law will neither assist you to coerce another to violate its provisions, nor suffer you to recover against another for refusing to do so.

In this case the plaintiffs do not ask to enforce any illegal contract. They do not ask to recover against defendants for refusing to violate the law. The defendants have received of them, as and for money, a large amount of notes—part good, and part not good, in consequence of a mistake committed by their agent. Their demand was to correct this mistake—to return the notes, or any of them, which were paid by mistake. Clearly, there is no violation of any law in such a claim. If the same amount of notes, and of the same denomination, had been found in the street by the defendants, or by any other person, would it be an answer to a claim made for them by plaintiffs, that a part of the property thus found consisted of small notes, issued contrary to an Act of Assembly? Or, to

put a case more nearly resembling the one before us, if not identical in principle, would it be a sufficient answer, under such circumstances, to say the notes found amounted to $3,306 ? You are justly indebted to me in the sum of $2,436, which leaves but $870; and amongst the notes, there were more than to that amount in small notes, illegally issued. Now, the defendants had no more claim to these notes, or any of them, than if they had found them: and, we think, there is a manifest distinction between such a case as this, and one to which the principles apply, which are referred to by the defendants' counsel.

The case of *Baugher vs. Danner's Executors*, affirmed in this court at December session, 1844, MS. is not like this case. There, *Joseph Danner*, a citizen of the town of *Emmittsburg*, was permitted by the corporation of the town to issue small notes in the name of the corporation, but for his sole benefit, and for the payment of which, he was to be alone responsible. He did issue a large amount of such notes, which were received as currency; and amongst others, the complainant, *Baugher*, received them to a considerable amount. *Danner* afterwards, by his will, directed his estate, real and personal, to be sold by his executors, and the proceeds to be applied to the payment of his debts and the small notes, issued by him in the name of the corporation of *Emmittsburg*, for which issues he was individually bound. The executors sold the estate, and refused to apply any part of the proceeds to the payment of these small notes, which he held to the amount of more than $1,200. The bill was filed to coerce payment, but was dismissed, upon the ground that it was an attempt to enforce the execution of an illegal contract. The notes were issued in violation of law; the promise to pay, which they contained on their face, was void by the Act of Assembly; and the very object of that proceeding was to obtain the aid of a court of equity, specifically to enforce the execution of a contract, held by the court to be void. Such is not the case here; there was nothing illegal in the demand of the plaintiffs—nor would a compliance with it involve any violation of law.

The case of *Catts* and *Phalen*, 2 *Howard*, 380, is in principle similar to this. *Catts* was in that case employed by *Phalen* to draw lottery tickets from the wheel. *Catts*, having secretly procured a ticket, concealed in his coat sleeve the numbers corresponding with those on his own ticket: and instead of fairly drawing such numbers as presented themselves by chance, drew out the concealed numbers, and thereby caused the ticket, held by his accomplice for his use, to be considered entitled to the highest prize; and *Catts* afterwards, through his accomplice, received the amount of the prize, for which sum the action was brought.

The defence was that the lottery was prohibited by law, and the money being received in the course of an illegal transaction, could not be recovered back. But the Supreme Court held the defence was not tenable, and affirmed the judgment of the Circuit Court, which had decided the recovery could be had.

The next difficulty suggested in the way of a recovery is, that this being an action for money had and received, it must be proved that *money* was actually received by the defendants.

The authorities cited, however, make it clear that any thing received *as money* will entitle the party. Thus, a bond, a note, a credit in account, and even land when received and acknowledged as money, have been respectively held to be sufficient to sustain a count for money had and received. Here, there are circumstances to show the defendants received money for the small notes; and they received, also, a large part of the payment in good notes.

**JUDGMENT REVERSED AND PROCEDENDO AWARDED.**