PRESTON and others *v.* CANADIAN BANK OF COMMERCE.

(*District Court, N. D. Illinois.* December Term, 1883.)

BANKS AND BANKING—CLEARING-HOUSE—PAYMENT UNDER MISTAKE.

    C. deposited certain collaterals with P., K. & Co., bankers and members of the Chicago Clearing-house, with the understanding that he should have a right to draw checks on them to within 10 per cent. of the value of the securities. On August 5, 1881, C. drew his check for $4,000, which was deposited with the defendant bank, also a member of the clearing-house, and sent it to his credit, and went into the exchanges for collection through the clearing-house on the morning of August 6th Under the rules of the clearing-house each member was required to pay its balances to the clearing-house by 12 o'clock, and any check which was found not to be good when returned from the clearing-house to the bank against which it was drawn, was to be returned to the bank which collected it through the clearing-house by half past 1 o'clock of the same day. When C.'s check came from the clearing-house into P., K. & Co.'s bank, his account was examined and the collaterals deemed sufficient to pay that check and others drawn on them by him, and they were handed over to the book-keeper to be charged into his account. At 42 minutes past 1, P., K. & Co. heard that C. had failed, when a second examination was had and it was found that a mistake had been made, whereupon the check was sent to defendant bank and payment demanded at 15 minutes before 2 o'clock and refused. P., K. & Co. brought suit against defendant to recover the amount of the check as money paid under mistake. *Held,* that they were not entitled to recover; distinguishing *Merchants' Nat. Bank* v. *National Eagle Bank,* 101 Mass. 281.

At Law.

*J. P. Wilson,* for plaintiffs.

*W. H. Swift,* for defendant.

BLODGETT, J. This is an action in *assumpsit* to recover the amount of a check drawn on the plaintiffs by Gardner P. Comstock, August

5, 1881, for the sum of $4,000, deposited with the defendant, the Canadian Bank of Commerce, by Comstock to his credit, and paid by the plaintiffs to the clearing-house, as plaintiffs claim, by mistake as to the condition of Comstock's account.

The main facts in the case, which I deem material for the purpose of disposing of the question, are briefly these:

Both the firm of Preston, Kean & Co. and the Canadian Bank of Commerce were members of the Chicago Clearing-house at the time this check was drawn and paid. Gardner P. Comstock carried on business in the city of Chicago under the name of G. P. Comstock & Co., and had an account both with the defendant bank and the banking firm of Preston, Kean & Co. So far as the proof shows, the account with the defendant was an ordinary deposit account for whatever money was deposited in the due course of Comstock's business with the defendant as Comstock's banker. The account that Comstock kept with the plaintiffs, Preston, Kean & Co., was not strictly a deposit account, but was an arrangement for credit; that is, Comstock left with the firm of Preston, Kean & Co. warehouse receipts for grain and provisions, and against these pledges of collaterals it was understood that Comstock should have a right to draw checks to the extent of the market value of the articles represented by these securities; that is, the agreement was that they were to pay his checks to within 10 per cent. of the value of the securities deposited with them. On August 5, 1881, Comstock drew his check on the plaintiffs for $4,000, which was deposited with the defendant bank to the credit of Comstock, and went into the exchanges for collection through the clearing-house on the morning of August 6th. By the rules of the clearing-house each member must pay its balances to the clearing-house, whatever they are, by 12 o'clock of that day, and any check which is not found to be good, when returned from the clearing-house to the bank against which it is drawn, must be returned to the bank which collected it, through the clearing-house, by half past 1 o'clock of the same day. The checks usually come into the banks from the clearing-house at from 11 to half past 11 o'clock each day, and the check in question came to the banking-house of the plaintiffs about half past 11. When the checks from the clearing-house on the day in question came into the plaintiffs' bank they were looked over by the cashier and assistant cashier, and passed upon as soon as they could be in the due course of business, and before half past 1 o'clock this check and the collaterals deposited with Comstock had been examined, and the collaterals deemed sufficient to justify the payment of the check in question, together with five other checks drawn by Comstock on the plaintiffs, amounting in all to about $13,000, and they were handed over to the book-keeper to be charged up to Comstock's account. At about 42 minutes past 1 o'clock information came to the plaintiffs' bank that Comstock had failed to make good his margins on the board of trade, and the cashier directed the assistant cash-

ier to look over Comstock's collaterals again.   The assistant cashier testifies that he re-examined the collaterals at once and found that he had made a mistake the first time, and that the collaterals in hand were not sufficient to meet the checks which had been drawn.   He at once sent a messenger with the check in question to the defendant bank, and, as the proof shows without dispute, it was presented to the defendant and payment demanded at 15 minutes before   o'clock, which payment was refused.   At the same time another of Comstock's checks for about $4,500, which had come in to the clearing-house from the Commercial National Bank, was also returned to that bank.

The plaintiffs seem to rest their right of action solely on the principle that this is money paid by reason of a mistake in the first examination of Comstock's account by their cashier; that they would have returned the check to the defendant before half past 1 o'clock, if their cashier had not, from the examination he first made of Comstock's collaterals, concluded them sufficient to justify them in paying; but the cashier states that on making a second computation of the value and amount of collaterals held by them, he found that he had counted one item twice and thereby made the amount too large.

The authority mainly relied on by the plaintiffs, aside from the general proposition that money paid by mistake may be recovered back, is the case of *Merchants' Nat. Bank* v. *National Eagle Bank,* 101 Mass. 281.   That was a clearing-house case, and like this in many important particulars.   The rule in the Boston Clearing-house required that checks which were found not good should be returned by a certain hour of the day on which they were received from the clearing-house; but, in that case, the plaintiff bank attempted in apt time to comply with the rule, sent its messenger to the defendant bank with the check, and, the messenger mistaking the directions, went to the wrong bank, and by reason of being obliged to return for more explicit directions, was a few minutes late in the presentation of the check at the defendant bank, and the court held that, under the circumstances, this was money paid by mistake.

The rule of the Chicago Clearing-house is found in section 7 of the constitution of that body, and is as follows: "All checks received in the morning exchanges not found good are to be returned the same day received, before one and a half P. M., to the member from whom received, who shall immediately reimburse the holder of the same." Section 11 of the constitution of the clearing-house also contains the following clause: "These articles of association shall be approved by the respective banks or bankers becoming members, and from that day shall become operative and binding."

There is no doubt of the general principle that money paid under a mistake of fact may be recovered back; but it is equally true and equally a fundamental proposition of law that parties who are competent to make a contract may agree within what time they may correct mistakes, if they are made.   Every one at all familiar with bank-

ing business knows that in the dispatch and haste, or apparent haste, with which large sums of money and complicated accounts are handled and business transacted during banking hours, mistakes are liable to occur; and the rapidity with which the different accounts are adjusted at the clearing-house is such as to make it possible, if not probable, that mistakes will occur; and it is therefore entirely competent for parties who are dealing with each other through an agency like the Chicago Clearing-house to make an agreement as to the time within which such mistakes shall be rectified. I cannot construe this rule of the Chicago Clearing-house as anything else than an agreement that checks shall be returned by half past 1 o'clock to the bank from which they come, when they are found not good; that is, it is a contract stipulation to that purport and effect between the members of the clearing-house. Now the question is, shall a mistake made by the bank against whom a check was drawn be allowed to abrogate that rule?

It seems to me that the Boston case has gone to the very verge of the application of the rule that money voluntarily paid under a mistake can be recovered back; and it is noticeable that the next succeeding case in the volume of Massachusetts Reports in which the case relied upon by the plaintiffs is reported, was where a bank sued to recover on the ground they had paid a check by reason of having made a mistake of fact as to the amount to the credit of the drawer, and the court held that no such recovery could be allowed, because it was laches to make such a mistake of fact.

If parties competent to contract within what time they may correct mistakes in their dealings with each other have so contracted, it seems to me the courts have no right to override or disregard such an agreement. If a mistake which is discovered within an hour, or within 10 minutes, after the expiration of the time limited by the agreement for its correction may be corrected, I can see no reason why it cannot be corrected a week afterwards, or whenever it is discovered. The Massachusetts court puts its decision on the ground that you may correct a mistake of this kind at any time after it is discovered, if it places the party to whom the check is returned in no worse condition than it would have been if it had been returned within the stipulated time; thus overlooking the rule that parties may agree that they shall not have the right to correct mistakes unless done within a limited time.

The issues are found for defendant.