## HALLENBECK v. LEIMERT.
### No. 5185.

Circuit Court of Appeals, Seventh Circuit.
June 30, 1934.

Rehearing Denied Sept. 28, 1934.

Carroll J. Lord and Russell F. Locke, both of Chicago, Ill., for appellant.

Daniel M. Healy, of Chicago, Ill., for appellee.

Before ALSCHULER, SPARKS, and FITZHENRY, Circuit Judges.

FITZHENRY, Circuit Judge.

Appellant is the receiver of the South Ashland National Bank and appellee the receiver of the Central Manufacturing District Bank. For convenience, the two banks will hereafter be referred to as the Ashland Bank and the Central Bank. The action was brought by the receiver of the Central Bank to recover moneys procured by the Ashland Bank by depositing for collection five checks aggregating $13,733. A jury was waived, and the trial court made findings of fact and conclusions of law and entered judgment against the defendant for $14,864.56, from which this appeal was taken. No bill of exceptions was signed, and we are therefore limited on this appeal to the question of whether the findings of fact, which were made a part of the record, justify the judgment.

The trial court found that one James E. Hodgkinson was, during March and April, 1932, a vice president of Hodgkinson & Durfee, Inc., and also vice president, a director, and owner of one-fourth of the stock, of the Ashland Bank. Hodgkinson & Durfee had an account at the Central Bank. On March 26, 1932, Hodgkinson drew four checks of the corporation, aggregating $12,183.92, on the Central Bank, payable to the order of the Ashland Bank, and delivered them to the Ashland Bank on the same day. On April 23, 1932, Hodgkinson drew an additional check of the corporation upon the Central Bank for $1,550, payable to himself, and on the same day he indorsed and delivered the check to the Ashland Bank. The four checks of March 26, 1932, were carried on the books of the Ashland Bank as assets of the bank until Saturday, April 23, 1932, when three of them and the one dated April 23, 1932, were deposited in the Federal Reserve Bank of Chicago. The fifth check, for $2,600, dated March 26, 1932, was forwarded to the First National Bank of Chicago for collection. Early on Monday morning, April 25, 1932,

the four checks sent to the Federal Reserve Bank for collection were turned in to the Chicago Clearing House Association by the Federal Reserve Bank. In accordance with the rules of the clearing house, the Central Bank, by its check, settled the balance due the clearing house, and received the checks in question deposited with the Federal Reserve Bank of Chicago, about 11:30 a. m., from a messenger of the Chicago Clearing House Association. Some time early in the afternoon, but after the "Clearing House" balance had been settled, the Central Bank learned that the payment of these checks would create an overdraft in the account of Hodgkinson & Durfee.

The check for $2,600 was never presented at the clearing house. The First National Bank, to which it was sent for collection by the Ashland Bank, carried an account of the Central Bank as well as the Ashland Bank. It charged the amount of this check to the Central Bank and credited it to the account of the Ashland Bank and sent the check out by messenger to the Central Bank some time after noon. As soon as the Central Bank learned of the overdraft that would be caused in the corporation's account if these five checks were paid, it notified Hodgkinson by telephone, and, at 9:30 o'clock the next morning, returned the checks to the Ashland Bank and demanded reimbursement. This was refused by the bank, which had received and kept the proceeds of the five checks.

During this time, the Federal Reserve Bank of Chicago and the First National Bank of Chicago were members of the Chicago Clearing House Association, while the Central Bank was an affiliated member of the association. A rule of the Chicago Clearing House Association in force at that time reads:

"In order that the member banks presenting such items may have an opportunity to give special instructions as to the protest of unpaid items, that notice of non-payment of any such items drawn on banks ⁙ ⁙ ⁙ which are ⁙ ⁙ ⁙ affiliated with members of the association ⁙ ⁙ ⁙ and which have their places of business located ⁙ ⁙ ⁙ on 12th Street or south thereof, be given by telephone before two-thirty o'clock (2:30) P. M. of the same day to the member banks presenting such items through the Clearing House. ⁙ ⁙ ⁙"

■■ Upon these facts the trial court found that the checks in question were not paid by the Central Bank on April 23, 1932, and appellant assigns this as error. It is conceded by both parties that, if payment were ac-

tually made by the bank on which the checks were drawn (in this case the Central Bank) or if, instead of actual payment, an unconditional credit had been given, then, though it were later discovered that there were insufficient funds on deposit in the account of the maker to cover the checks, the payment would be absolute and irrevocable. The fact that the Central Bank gave its check in settlement of the clearing house balance and that the four checks went to make up a portion of this balance, does not in itself constitute final and irrevocable payment. Neither did the exchange of credits on the books of the First National Bank constitute final and irrevocable payment by the Central Bank of the checks there in question. Brady on Bank Checks (2d. Ed.) 502; Sneider v. Bank of Italy, 184 Cal. 595, 194 P. 1021, 12 A. L. R. 993; Columbia-K. Trust Co. v. Miller, 215 N. Y. 191, 109 N. E. 179, Ann. Cas. 1917A, 348; Hentz v. National City Bank, 159 App. Div. 743, 144 N. Y. S. 979. The method of transacting business followed by the clearing house association contemplates that the members will immediately examine the various items which go to make up the balance and only the subsequent lapse of time without electing to dishonor the check causes the settlement to become final. In the case of members of the clearing house, the time within which notice must be given is fixed by agreement. In the case of banks not members of the clearing house, the provisions of the Negotiable Instruments Law must govern as to what length of time may elapse before the tentative payment becomes final and irrevocable.

■ Appellant argues that, since the Central Bank never returned the checks to the clearing house and made no attempt to hold the clearing house association, the Federal Reserve Bank, or the First National Bank accountable, the clearing house settlement became final upon the lapse of time fixed by the rules. We cannot agree with this position. The Ashland Bank was not a member of, or affiliated with, the clearing house association, and is vested with no rights based upon its rules. 1 Morse on Banks and Banking (6th Ed.) 810; National Exchange Bank v. Ginn & Co., 114 Md. 181, 78 A. 1026, 33 L. R. A. (N. S.) 963, Ann. Cas. 1914C, 508; Brady on Bank Checks (2d Ed.) 503; 8 Michie on Banks and Banking, 165. In this respect the case is distinguishable from Preston v. Canadian Bank of Commerce (D. C.) 23 F. 179.

The Central Bank having elected to recover from the Ashland Bank directly, all that

was necessary to bring the giving of notice of dishonor within the provisions of the Negotiable Instruments Law was that notice be given "before the close of business hours on the day following." Smith-Hurd Rev. St. Ill. 1933, c. 98, § 124, Cahill's Ill. Rev. Stat. 1933, c. 98, par. 124. In the instant case the checks were tendered back to the Ashland Bank and demand for reimbursement made when the bank opened on the day following. The District Court properly held that the checks in question were not paid by the Central Bank on April 23, 1932. The notice given by the Central Bank to the Ashland Bank was in compliance with the terms of the Negotiable Instruments Law and the Ashland Bank was properly held liable to reimburse the Central Bank for the amount of the checks.

The judgment of the District Court is affirmed.