[S. F. No. 9429.   In Bank.—December 30, 1920.]

## EMMA SNEIDER, as Administratrix, etc., Respondent, v. BANK OF ITALY (a Corporation), Appellant.

[1] BANKS AND BANKING—CHECK—WHEN ASSIGNMENT OF FUNDS.— A bank check is a direction by a creditor to a debtor for the disposition of funds, and it does not operate as an assignment of the funds themselves, in view of section 3265e of the Civil Code, unless and until the bank accepts or certifies the check.

[2] ID.—DEATH OF DEPOSITOR—PAYMENT OF CHECK—LIABILITY OF BANK.—The vitality of a check at least where it has not been accepted or certified prior to the knowledge of the death of the depositor ceases upon receipt of such knowledge by the bank, and a bank which pays such a check after knowledge of the death of the depositor is liable to the estate of the depositor.

[3] ID.—CLEARING-HOUSE TRANSACTION—NONPAYMENT OF CHECKS.— A clearing-house transaction in which certain checks were delivered to the representative of the bank upon which they were drawn by another bank which was given money or credit therefor did not, in and of itself, constitute a payment of the checks, but was merely a presentation for payment and a preliminary adjustment of balances.

[4] ID.—REFUSAL OF PAYMENT OF CHECKS—ERRONEOUS REASON—NON-PAYMENT.—Checks presented through the clearing-house to the bank upon which they were drawn were not paid where such bank refused payment and perfected its refusal by returning the checks to and receiving a refunding check from the presenting bank, although the reason assigned for such refusal was based on a mistake of fact.

[5] ID.—RULES OF CLEARING-HOUSE—INAPPLICABILITY TO NONMEM-BERS.—The rules of a clearing-house, as such, do not govern the rights of a drawer or payee who are not members of the clearing-house and do not contract with express reference to such rules.

[6] ID.—REFUSAL OF PAYMENT OF CHECK—LACK OF JUSTIFICATION—RIGHT OF BANK.—In view of section 3265e of the Civil Code, it is immaterial in determining the question of payment of a check whether the drawee bank has in fact a valid ground for refusal, since it can refuse payment for no reason at all without incurring any liability to the payee.

2.   Effect of death of maker before presentation of check for payment, note, Ann. Cas. 1915A, 443.

5.   Rules and usages of clearing-houses, note, Ann. Cas. 1914C, 514.

[7] ID.—SUBSEQUENT DIRECTION CONCERNING CHECKS—NONPAYMENT.—
Where a bank to which checks were delivered through the clearing-
house refused payment for an erroneous reason, and upon its at-
tention being called to the error directed the presenting bank to
again put the checks through the clearing-house, but before they
again reached the bank the depositor died, such direction did not
constitute an agreement to pay nor did it amount to ' actual pay-
ment, and particularly so where the bank did not debit the drawer's
account with the amount of the checks, but, on the contrary, paid
and honored other checks leaving insufficient funds to meet the
checks in question.

APPEAL from a judgment of the Superior Court of the
City and County of San Francisco. Daniel C. Deasy, Judge.
Affirmed.

The facts are stated in the opinion of the court.

Harry G. McKannay and McKannay & Hunt for Appellant.

tum Suden & tum Suden for Respondent.

LENNON, J.—Plaintiff, the administratrix of the estate of
George C. Sneider, deceased, is suing to recover the sum of
$838.35, claimed to be the balance due on account of moneys
deposited with defendant, the Bank of Italy, by said George
C. Sneider during his lifetime. The present litigation is the
outgrowth of a dispute over the payment of two checks for
six hundred dollars each, drawn by George C. Sneider against
his account with said defendant bank. These two checks,
which were drawn on March 13, 1918, were indorsed by the
payee and delivered to the Wells Fargo Nevada National
Bank on March 14, 1918, and on the same day were sent to
the clearing-house by the last-named bank. At the clearing-
house the checks were delivered to the clearing-house repre-
sentative of the Bank of Italy and, in turn, for the purpose
of clearing the accounts between the two banks, the Bank of
Italy gave money or credit to the Wells Fargo Nevada Na-
tional Bank to cover the amount represented by the Sneider
checks. When the checks reached the Bank of Italy they
were rejected by that bank, which sent them back to the
Wells Fargo Bank by messenger on the afternoon of March
14, 1918. A slip was attached to the checks stating that the
reason for the rejection was the fact that they were not

drawn upon the Bank of Italy. This statement was a self-evident error; there was, however, some evidence tending to show that, when the checks reached the Bank of Italy, there were not sufficient funds in Sneider's account to cover them, by reason of overdrafts, and that this was the real reason for the rejection. The Wells Fargo Bank, upon receiving the rejected checks, issued its own check to the Bank of Italy for one thousand two hundred dollars in order to return the sum received on account of the two checks in the clearing-house transaction that morning. This check was subsequently cashed by the Bank of Italy.

Later in the afternoon of March 14, 1918, after the Wells Fargo Bank's teller had issued the refunding check and the messenger of the Bank of Italy had departed with it, it was discovered that the reason assigned for the rejection of the checks in question was obviously erroneous. One of the clerks of the Wells Fargo Bank telephoned to the Bank of Italy and talked with "someone," it does not appear whom, about the matter. The last-mentioned person directed that the checks be returned to the Bank of Italy by the messenger, but, upon being informed that the messenger had left, told the clerk of the Wells Fargo Bank to put them through the clearing-house again. Accordingly, the Wells Fargo Bank sent these checks to the clearing-house on the morning of March 15th. When they again reached the Bank of Italy, the latter again rejected them, this time on the ground that Sneider, the drawer of the checks, had died that morning. A second reclamation was made against the Wells Fargo Bank and one thousand two hundred dollars, covering the checks in question, was included in a check issued by the Wells Fargo Bank to the Bank of Italy by way of reclamation, although it is claimed that the Wells Fargo Bank in fact refused to reclaim these checks a second time and that the one thousand two hundred dollars was included in the refunding check by mistake. After considerable controversy with the Wells Fargo Bank and the administratrix, the Bank of Italy turned one thousand two hundred dollars over to the Wells Fargo Bank, took up the two checks, and, on March 29, 1918, charged Sneider's account with the amount of the checks, leaving Sneider's estate chargeable with an overdraft of $361.61.

The trial court held that the administratrix was entitled to recover the amount on deposit at the time of death of the intestate without any deduction on account of the two six hundred dollar checks and, accordingly, rendered judgment in favor of the plaintiff for the sum of $838.35. Defendant appeals from the judgment.

[1] In this state a bank check is a direction by a creditor to a debtor for the disposition of funds, and it does not operate as an assignment of the funds themselves unless and until the bank accepts or certifies the check. (Civ. Code, sec. 3265e.) [2] Consequently, the vitality of a check, at least where it has not been accepted or certified prior to the knowledge of the death of the depositor, ceases upon receipt of such knowledge by the bank, and a bank which pays such a check after knowledge of the death of the depositor is liable to the estate of the depositor. (*Pullen* v. *Placer County Bank,* 138 Cal. 169, [94 Am. St. Rep. 19, 66 Pac. 740, 71 Pac. 83] ; 35 Ann. Cas. 443, note; 7 C. J. 702.) The sole issue in the present case is, therefore, whether or not the two six hundred dollar checks drawn by the decedent were paid by the defendant bank prior to the morning of March 15, 1918.

[3] The clearing-house transaction on the morning of March 14th, wherein the Wells Fargo Bank received the amount of the two checks from the Bank of Italy in credit or otherwise, did not, in and of itself, constitute a payment of the checks. As stated in *Hentz* v. *National City Bank,* 159 App. Div. 743, 746, [144 N. Y. Supp. 979, 981], "A payment through the clearing-house and a payment over the counters of a bank upon which a check is drawn are entirely different. The clearing-house is simply a representative of all the banks who are members of it. Its purpose is to enable these banks to go to the clearing-house each day and there present checks drawn on other clearing-house banks received the day before and receive from the clearing-house checks drawn on the presenting bank which have been sent in by some other member. The clearing-house then balances the checks sent by a bank against those sent to it, and later in the day a bank either pays or receives the balance due to or owed by it; in other words, it is an adjustment of balances, solely for the convenience of the banks who are members of the association. It is in no sense a payment binding upon the bank upon which the check is drawn, so far as the payee named therein

is concerned. . . . The payment of a clearing-house balance is not a payment of any particular check. . . . This would seem to follow from the necessity of each case, because a bank upon which a check is drawn has no opportunity to examine it until after it has been received from the clearing-house.'' (See, also, *Columbia-Knickerbocker Trust Co.* v. *Miller,* 156 App. Div. 810, [142 N. Y. Supp. 440]; *First Nat. Bank* v. *National Park Bank,* 181 App. Div. 103, [168 N. Y. Supp. 422]; affirmed, 180 N. Y. Supp. 937.)

[4] Proceeding, then, upon the premise that the transaction at the clearing-house did not constitute a payment, but was merely a presentation for payment and a preliminary adjustment of balances, the issue before us is narrowed to a consideration of the question as to whether or not the Bank of Italy did in fact accept or pay the checks between the time when it received them from its clearing-house representative on March 14th and the morning of March 15th, when it received news of the death of Sneider. Looking to the facts, we find not only that the bank did nothing which could be construed as an acceptance or payment, but, on the contrary, refused to pay the checks and perfected its refusal by returning the checks to and receiving a refunding check from the presenting bank. The effectiveness of the refusal to pay was in no way impaired by the fact that the reason assigned for the refusal was based on a mistake of fact. [5] The rules of a clearing-house, as such, do not govern the rights of a drawer and payee who are not members of the clearing-house and do not contract with express reference to such rules. (Brady's Law of Bank Checks, sec. 229; 7 C. J. 897.) By the provisions of the Civil Code a check is not an assignment of funds and the drawee is not liable thereon to the holder until it accepts or certifies the same. (Civ. Code, sec. 3265e.) [6] It is immaterial, therefore, in determining the question of payment, whether the bank had in fact a valid ground for refusal to pay, such as insufficiency of funds, and, through clerical error assigned an incorrect reason, or whether the refusal was entirely without justification; the drawee bank can refuse to pay a check for no reason at all without incurring any liability to the payee, and, where such a refusal is made, whatever the liability of the drawee bank to the drawer, there is, in fact, no payment of the check.

A situation similar to that presented in the instant case was passed upon in the case of *Eastman Kodak Co.* v. *National Park Bank,* 231 Fed. 320 (affirmed, 247 Fed. 1002, [159 C. C. A. 662]). In that case, a check.which was presented through the clearing-house was refused by the drawee and returned to the presenting bank, which refunded the money received through the clearing-house to cover the check; the reason assigned by the drawee for the rejection of the check was based upon a mistake of fact. The court held there had been no payment of the check and, in discussing the question of the mistake in rejecting the check, said: "The mistake was quite irrelevant. Had the National Park Bank refused to honor the check willfully and for no reason whatever, no liability would have attached to it; the payee can sue only the drawer, and the drawer must look to the drawee." The fact that the presenting bank, upon receiving the rejected check, issued its own check to the drawee by way of reclamation, thus, in form, making a "repayment," instead of changing the clearing-house entries, was also held an immaterial factor in the determination of whether or not there had ever been an actual payment. Upon this phase of the case the court said: "In form that was a repayment, but it was not such in its whole setting; it was only to avoid garbling the original entries and the footings, and so confusing the bookkeeping." The clearing-house settlement between the banks is only a tentative arrangement of balances for the facilitation of business, and the refunding of money or credit received in the course of such a preliminary settlement is no more than a step in the correction of errors in bookkeeping temporarily tolerated in the interests of expedition.

[7] The undisputed facts of the present case further reveal that, as previously stated, on the afternoon of March 14th "someone" in the Bank of Italy told a clerk of the Wells Fargo Bank, over the telephone, to return the rejected checks to the Bank of Italy by messenger, and it is upon this point that appellant relies in support of the contention that the checks were, from that time, considered as paid by both banks. The answer to this argument is to be found in the following statement, quoted from appellant's own brief: "Had the messenger of the Bank of Italy tarried a few moments longer at the Wells Fargo Nevada National Bank and had the checks been given back to him pursuant to instruc-

tions, there would have been no litigation before this court."
It is possible that, in the meantime, additional deposits had
been made by the drawer of the checks and that, therefore,
had the checks been returned by messenger they would have
been paid on the afternoon of March 14th, but the difficulty
with appellant's position is that nothing of the sort ever
happened. Upon hearing that the messenger had departed
from the Wells Fargo Bank, no arrangement was made for
the immediate return of the checks to the Bank of Italy, or
for their immediate cancellation or acceptance. The direc-
tion was given to "put them through the clearing-house
again." It may be that, upon learning that the messenger
had departed, the person in the Bank of Italy thought that
the clearing-house would provide the most convenient method
for returning the checks, and that, at that time, there was no
doubt but that the Wells Fargo Bank was entitled to receive
payment; on the other hand, it is equally possible that, upon
second thought, the said person deemed it more advisable that
the defendant bank should have an opportunity to re-examine
the checks in question. All this, however, is a matter of
mere conjecture and the rights of the present parties must be
determined by what was actually done. The direction given,
while it amounted to an abandonment for the time being of
the reason assigned for the refusal to honor the checks, did
not constitute an agreement to pay, aside from the fact that
the acceptance of a check must be in writing (Civ. Code, secs.
3265a and 3213), nor did it amount to actual payment. It
left matters where they were before the clearing-house trans-
action of March 14th and required a new presentation for
payment, a new temporary adjustment of balances, and a
reconsideration of the checks by the defendant bank. Before
the time for reconsideration arrived, a different or a new
reason might be and was, in fact, found for the rejection of
the checks, namely, the death of the drawer. The second
rejection was promptly made and the checks were not taken
up and canceled until a considerable interval after knowledge
of the death of the drawer.

There are other indications that the Bank of Italy did not
consider that these checks had been paid on March 14th. At
the close of banking hours on March 14th, there was, due to
additional deposits on that afternoon, a balance on hand in
Sneider's account which more than covered the amount of the

checks in question. After the direction to the Wells Fargo Bank to return the checks in question through the clearing-house, the defendant bank did not then and there debit them to Sneider's account, but, on the contrary, on the ensuing morning paid and honored other checks of Sneider's to the amount of $939, thereby so depleting his balance as to leave insufficient funds to meet the two checks being presented through the clearing-house. This fact militates strongly against appellant's contention to the effect that the checks in question were paid as between the banks, conversationally or otherwise, on March 14th.

The facts of the case show that there was no payment of the two six hundred dollar checks prior to March 15, 1918, and the trial court was, therefore, correct in holding that the plaintiff is entitled to recover the balance to the credit of Sneider without deducting the amount of the two checks.

The judgment is affirmed.

Angellotti, C. J., Olney, J., Wilbur, J., Sloane, J., and Lawlor, J., concurred.

Rehearing denied.

All the Justices concurred.