The People of the State of Illinois ex rel. Oscar Nelson, Auditor of Public Accounts of Illinois, Complainant, v. Sheridan Trust & Savings Bank, Defendant.
Martha Washington Candies Company, Appellant, v. Ernest Ridgeway, Receiver for Sheridan Trust & Savings Bank, Appellee.

Gen. No. 36,198.

28

Opinion filed October 10, 1933.
Rehearing denied October 23, 1933.

J. LESTER WILLIAMS and MARVIN WALLACH, for appellant; J. LESTER WILLIAMS, JR., of counsel.

BRUNDAGE, LANDON & HOLT, for appellee; FLOYD E. BRITTON, of counsel.

MR. JUSTICE GRIDLEY delivered the opinion of the court.

This is an appeal by the Martha Washington Candies Company, a corporation (hereinafter called the Candy Co.) from an order or decree of the circuit court, entered June 16, 1932, denying it a preferred claim, as to $25,000 of its total claim, in the assets of the Sheridan Trust & Savings Bank (hereinafter called the Sheridan Bank), which was closed by the auditor of public accounts of Illinois on June 6, 1931,

followed shortly thereafter by the appointment of Ernest Ridgeway, as receiver.

In the intervening petition of the Candy Co., filed on October 6, 1931, a part of the prayer is that "an order be entered herein, directing the receiver to turn over to petitioner the sum of $25,000, plus interest and costs,—the same having come into the possession of the receiver by reason of the deposit of a bill of exchange of said amount with the Sheridan Bank drawn June 4, 1931, on the First National Bank of Kansas City, Missouri, and having been by it honored and paid." In the receiver's answer he denied that any part of the Candy Co.'s total deposit in the Sheridan Bank was a trust fund or preferred claim, and particularly denied the right of the Candy Co. to have the sum of $25,000 adjudged as a preferred claim. On October 7, 1931, on the receiver's motion, the issues raised by the petition and answer were referred to a master in chancery to take evidence and report the same, together with his conclusions of fact and law. On the hearing before the master during April, 1932, certain material facts were stipulated to, certain documentary evidence was introduced, and the testimony of William J. Heffernan, assistant general manager of the Candy Co., was heard. During May, 1932, the master's report was filed, in which the material findings are in substance as follows:

That on the day the Sheridan Bank was closed by the State auditor (Saturday, June 6, 1931), the Candy Co. had two accounts with the bank,—a general checking account and a payroll account; that the balance in both accounts to the credit of the Candy Co. amounted to $42,852.80 (of which the sum of $25,000 in controversy was a part); that the Candy Co. was not indebted to the bank, nor did the bank have any equitable set-off against any part of said amount of $42,852.80; that on June 4, 1931, the general account

of the Candy Co. with the bank was credited with the sum of $25,000, "conditional, however, upon final collection and payment in money or *solvent credits*" of a certain bill of exchange or check for said sum, drawn by the Candy Co. upon its account at the First National Bank of Kansas City, payable to the order of itself, and indorsed by it *"for deposit only,"* which instrument was on said day deposited with said Sheridan Bank "for collection"; that on the following day (June 5th) the instrument was deposited by the Sheridan Bank with the Foreman-State National Bank of Chicago (hereinafter called the Foreman Bank) "for collection," and was credited to the Sheridan Bank's account at the Foreman Bank "conditional upon final payment thereof in money or solvent credits"; that the Foreman Bank forwarded the instrument by mail to the Federal Reserve Bank of Kansas City, with instructions to collect the amount of it and "remit the proceeds to the Federal Reserve Bank of Chicago, to be credited to the account of the Foreman Bank"; that in accordance with the instructions the Federal Reserve Bank of Kansas City, on *June 6, 1931,* presented the instrument to the First National Bank of Kansas City for payment, and on that day received payment of the amount and "remitted the proceeds to the Federal Reserve Bank of Chicago," which last named bank "received the proceeds on *June 6, 1931,* and credited the account of the Foreman Bank with the sum on said date"; that "the credit of the sum of $25,000 of the Foreman Bank *became final* at the close of the business day on *June 6, 1931;* and that the conditional credit to the Sheridan Bank's account at the Foreman Bank, and the conditional credit to the Candy Co.'s account at said Sheridan Bank, *became simultaneously final, unconditional, solvent credits, respectively."*

The master further found that the ''Sheridan Bank received the proceeds of the check for $25,000, in solvent credits, *before* the Auditor of Public Accounts took possession of the Sheridan Bank, on to wit, Monday, June 8, 1931, at about 8 o'clock, a. m.; and that said sum is not impressed with a trust.'' And the master recommended that ''the balance in the hands of the receiver and credited to the account of the petitioner herein, amounting to $37,499.50'' (which includes the $25,000 here involved) ''be allowed as a *general* claim, payable in due course of administration.''

On May 19, 1932, the court, having considered the master's report and having directed that the Candy Co.'s objections thereto stand as exceptions, entered an order making certain adjudications as to the claims of the Candy Co. concerning $17,852.80 of its total deposit of $42,852.80 in the Sheridan Bank at the time it was closed by the State auditor. These particular adjudications are not here material and may be disregarded. In the order it is further adjudged:

''That the court reserves jurisdiction solely on the question of the single item of $25,000, to determine on further hearing by the court whether or not same shall be impressed with a trust and paid as a preferred claim according to the exceptions of the intervening petitioner (Candy Co.) or whether same is to be allowed as a general claim and paid in due course of administration according to the report of the master herein, which said hearing is set for June 2, 1932, before the court.''

During June, 1932, there was a hearing in open court as to the item of $25,000, based upon the pleadings, the master's report and exceptions thereto, the facts as stipulated before the master and the evidence taken before him, and certain additional documentary evidence introduced before the chancellor. At the con-

clusion of the hearing the court on June 16, 1932, entered the order or decree in question, in which the court made findings in substance as follows:

(1). That on June 4, 1931, the sum of $25,000 was credited in the pass-book of the Candy Co. to its account with the Sheridan Bank, "conditional upon the final collection and payment in money or solvent credits of a certain bill of exchange for said sum, drawn by the Candy Co. upon its own account at the First National Bank of Kansas City, payable to the order of itself and endorsed by it *'for deposit only,* transfer $25,000'* which said bill of exchange was deposited with the Sheridan Bank for collection.''

(2). That the bill of exchange was deposited on June 5, 1931, by the Sheridan Bank with the Foreman Bank "for collection," and was credited to the Sheridan Bank's account at the Foreman Bank "conditional upon final payment thereof in money or solvent credits.''

(3). That the Foreman Bank forwarded bill of exchange by mail to the Federal Reserve Bank of Kansas City "with instructions to collect and remit the proceeds to the Federal Reserve Bank of Chicago to be credited to the account of the Foreman Bank.''

(4). That in accordance with the instructions the Federal Reserve Bank of Kansas City on *June 6, 1931,* presented the bill of exchange to the First National Bank of Kansas City for payment and "received payment thereof on June 6, 1931, and remitted the proceeds *after* the close of business on said date'' and that "the Federal Reserve Bank at Chicago received said proceeds on June 6, 1931'' and, *subject to 'Regulation J',* credited the account of the Foreman Bank with said sum on said date.''

(5.) That the conditional credit of $25,000 on the books of the Foreman Bank to the Sheridan Bank "became final and unconditional at the close of busi-

ness on June 6, 1931''; that said conditional credit to the Candy Co. by the Sheridan Bank ''became, simultaneously, final and unconditional''; and that ''said credits at the Federal Reserve Bank of Chicago and at the Foreman Bank were respectively solvent credits.''

And the court adjudged in substance:

That the exceptions of the Candy Co. to the master's report are overruled, and his report in all respects approved and confirmed.

That the prayer of the intervening petitioner (viz., that the $25,000 be refunded to it and that a trust be declared with relation thereto against cash on hand and in banks which came into the possession of the receiver for the Sheridan Bank) ''be and the same is hereby denied,'' and that ''the balance of the amount (including said $25,000) standing to the credit of the intervening petitioner on the books of the Sheridan Bank, to-wit, the sum of $37,499.50, be and is hereby allowed as a *general* claim against the estate of said bank, to be paid in due course of administration.''

Supplementing the facts as found by the master and the court, the following facts also appear from the evidence:

The Candy Co. operated a chain of candy stores in the United States. Its main depositary was the Sheridan Bank at Chicago, and among its numerous other depositaries was the First National Bank at Kansas City. In its business dealings with the Sheridan Bank it had never drawn against uncollected deposits. It had in the past frequently transferred funds, standing to its credit in the Kansas City Bank, to its credit in the Sheridan Bank and had done so by the same method as adopted in the present transaction. And it had ascertained by the former transfers that, as to drafts drawn against its account in the Kansas City bank and deposited with the Sheridan Bank for col-

lection, the time usually required for said drafts "to clear," and the money to become definitely available to it in Chicago, was about four days. On Thursday, June 4, 1931, the Candy Co., at Chicago, drew the draft or bill of exchange for $25,000 on the First National Bank of Kansas City. It is post-dated "Chicago, June 5, 1931" and is payable to the order of "ourselves." On the back is the indorsement of "Transfer $25,000, for *deposit only*," followed by the signature of the Candy Co. by its vice president. The instrument, so indorsed and accompanied by the usual deposit slip, was deposited with the Sheridan Bank, "for collection," on June 4th, and the item was conditionally credited to the Candy Co. in the pass-book, also then presented. Among the printed notations on the back of the deposit slip, as well as in the pass-book, were the following:

"All items credited conditionally, subject to final payment and the right to charge back pending final settlement of the proceeds thereof in money. In receiving items for deposit, or collection, this Bank acts only as depositor's *collecting agent* and assumes no responsibility beyond the exercise of due care. All items are credited or cashed subject to final payment in cash or *solvent credits*. . . . This Bank or its correspondents may send items directly or indirectly to any bank including the payor, and accept the draft or credit of such bank as conditional payment in lieu of cash. . . ."

On the same day (June 4th) the Sheridan Bank, by its cashier, indorsed the bill of exchange "Pay to the order of Foreman Bank, all prior endorsements guaranteed," and on June 5th deposited it "for collection" in its account at the Foreman Bank, and the amount thereof was there conditionally credited to the Sheridan Bank's account "subject to final payment in cash or solvent credits." The Foreman Bank then in-

dorsed it, "Sheridan Bank, pay through Chicago Clearing House, 18, June 5, 1931," and also, "Pay to the order of any bank or banker; all prior endorsements guaranteed." And the Foreman Bank, being a member of the Federal Reserve System, prepared a list of items, totaling $26,683.36 (of which the $25,000 item was one) and mailed the instruments, for collection, to the Federal Reserve Bank of Kansas City with a letter as follows: "We enclose the following items for our credit with the Federal Reserve Bank at Chicago; telegraph *non-payment* of items $500 or over." And simultaneously on June 5th, the Foreman Bank, by virtue of an arrangement between banks and a certain "Time Schedule," sent a notice to the Federal Reserve Bank at Chicago for a "deferred credit" of said sum of $26,683.36, under the provisions of "Regulation J" of the Federal Reserve Board. The notice, under a heading "One Calendar Day Points," stated: "We have today sent cash letters direct to the Federal Reserve Banks and branches listed below to be credited to *our reserve account* on *June 6, 1931.*" The purpose of this notice evidently was that the items (including the $25,000 item), forwarded to a point *one day distant,* could be credited to the *Foreman Bank* by the Federal Reserve Bank at Chicago on June 6, 1931, thereby permitting said items to be computed in the Foreman Bank's *reserve* of that date. It appears that the various Federal Reserve Banks, including those at Chicago and Kansas City, maintain a gold reserve at Washington, D. C., subject to the daily balancing of credits between them; that at the close of business on any day each bank advises by telegram the Federal Reserve Board at Washington as to the amounts each holds for the credit of other banks, and from the gold reserve of the reporting bank there is transferred to the gold reserve of the respective banks such funds as may be

necessary to settle the credits; and that in section IV of "Regulation J," under the heading "Time Schedule and Availability of Credits," it is provided:

"(1) Each Federal reserve bank will publish a time schedule showing the time at which any item sent to it will be counted as reserve and become available for withdrawal or other use by the sending bank. For all checks received, the sending bank will be given immediate credit, or deferred credit, in accordance with such time schedule, and as provided below. . . .

"(3) For all such checks as are received for deferred credit in accordance with such time schedule, deferred credit, subject to final payment, will be entered upon the books of the Federal reserve bank at full face value, but the proceeds will not be counted *as reserve* nor become available for withdrawal or other use by the sending bank until such time as may be specified in such time schedule, at which time credit will be transferred from the deferred account to the reserve account or clearing account subject to final payment, and will then be counted *as reserve* and *become available* for withdrawal or other use by the sending bank, *provided, however,* that the Federal reserve bank may in its discretion refuse at any time to permit the withdrawal or other use of credit given for any item for which the Federal reserve bank has not yet received payment in actually and finally collected funds."

The bill of exchange in question was, *about noon* on Saturday, June 6, presented for payment by the Federal Reserve Bank of Kansas City to the First National Bank of that city, and the last named bank paid it. On the same day the Federal Reserve Bank at Chicago, on the original notice (which the Foreman Bank had sent to it on June 5, as to the deferred credit on said items aggregating $26,683.36) made the indorsement "*Available* Jun. 6, 1931; entered Jun. 6,

1931; *Bookkeeping* dep't.'' On the same day at Kansas City the Federal Reserve Bank of that city *mailed* to the Federal Reserve Bank at Chicago a letter of advice that said items, aggregating $26,683.36 and including the $25,000 in question, had been paid, and that the said Chicago Federal Reserve Bank had been credited with said sum. This letter was not received by the Federal Reserve Bank at Chicago, *until Monday morning, June 8, 1931,* which was *after* the State auditor had closed the Sheridan Bank and had taken possession of its assets. Thereafter appropriate bookkeeping entries were made to the effect that the $25,000 item was received by the Foreman Bank, on its account with the Sheridan Bank, and by other appropriate entries that said item had been received by the Sheridan Bank. It was stipulated that at the time the Sheridan Bank was closed by the auditor on the evening of Saturday, June 6, 1931, it was largely indebted to the Foreman Bank, but that the Foreman Bank then held large amounts of collateral sufficient to satisfy said indebtedness and to create an over-plus. No point was made on the hearing before the chancellor, nor is it made here, that at the time of the filing of the Candy Co.'s petition there were not sufficient funds in the hands of the receiver of the Sheridan Bank available to pay the claim of the Candy Co., if it should be adjudged that the same was impressed with a trust and should be considered as a preferred claim.

Counsel for the receiver of the Sheridan Bank, in their brief here filed, make the following statement (italics ours):

''The issue in this case is simple. Appellant (Candy Co.) claims the agency to collect the item in question *was never completed* before the auditor of public accounts took possession of the Sheridan Bank. Appellee (the receiver) claims it was completed. The

terms of the agency were simple. Appellant deposited the item for collection and credit to its account at the Sheridan Bank pursuant to a deposit contract on the back of the deposit slip, the essential portion of which is the sentence: 'All items are credited or cashed subject to final payment in cash or solvent credits.' If the bank received 'final payment in cash or *solvent credits*' before 8 A. M., Monday, June 8, 1931, when the auditor took possession of the bank, the agency had been completed and *the relation of debtor and creditor established* between the bank and appellant. If the bank had not by that time received 'final payment in cash or solvent credits,' the agency had not been completed, and *appellant is entitled to a return of the proceeds of the item out of the fund consisting of cash on hand and in banks which came into the possession of the receiver.* (Citing *People v. Auburn State Bank,* 215 Ill. App. 133.)''

Counsel for appellant (the Candy Co.) in their brief make the following statement (italics ours):

''The ordinary relationship of a *cash* depositor and the bank is that of Debtor and Creditor, and, if such be the relationship established here, then the Candy Co. is not entitled to a preference on its claim for the item of $25,000. But, where, *instead of cash,* a bill of exchange, post-dated, is placed with a bank for collection on a distant point, *restrictively endorsed,* intervening petitioner submits that not until the agency for collection *terminates* does the relation of Debtor and Creditor come into existence—and that in the instant case, it never came into existence.''

After a careful review of the stipulated facts and other evidence in the record, the exhaustive and able briefs of respective counsel, and numerous authorities and adjudicated cases, we are of the opinion that the Candy Co. is entitled to a *preferred* claim as to said sum of $25,000, to be paid out of the estate of the

Sheridan Bank now in possession of the receiver, and that the court erred in entering the decree appealed from, wherein the court adjudged that said sum be allowed to the Candy Co. "as a *general* claim against the estate of said bank, to be paid in due course of administration."

Among the material facts in the present case is the fact that when on June 4, 1931, the Candy Co. deposited the bill of exchange "for collection" with the Sheridan Bank, it not only was post-dated (June 5, 1931) but it bore the payee's (Candy Co.) indorsement "for deposit only." Such an indorsement is a restrictive one and gives notice to all subsequent holders of the restriction. In 3 R. C. L., p. 1079, sec. 283, it is said: "A restrictive indorsement—'for deposit,' 'for collection,' or the like—gives to all subsequent holders of the instrument express notice that the restricted indorsee has no property in the bill or note, and that he is a *mere trustee,* without authority to appoint a sub-agent except for the purpose of holding the paper or money on the same trust." (See, also, *First Nat. Bank of Sioux City v. Morrell & Co.,* 53 S. D. 496, 498.) This is in accord with the policy and decisions in this State. In section 4 of the act of our legislature, "defining the relations between banks and their depositors with respect to the deposit and collection of checks and other instruments payable in money," approved July 8, 1931 (Cahill's St. 1931, ch. 16a, ¶ 28, p. 176) it is provided: "An indorsement of an item by the payee or other depositor 'for deposit' shall be deemed a restrictive indorsement and indicate that the indorsee bank is an *agent for collection* and *not owner* of the item." (See, also, the decision and holdings in *Wilson v. Carlinville Nat. Bank,* 187 Ill. 222, 224.) In the South Dakota case of *First Nat. Bank of Sioux City v. Morrell & Co., supra,* where certain customers' checks payable to the order

of Morrell & Co. had been deposited by it for collection in the Sioux Falls Nat. Bank and it had indorsed them to the order of said bank "for deposit only," it is said (pp. 498, 499, italics ours):

"Such an indorsement confers upon the indorsee the right to transfer its rights as indorsee, because the indorsement authorized payment 'to the order of Sioux Falls Nat. Bank'; but the subsequent indorsee (in this case, plaintiff) acquires *only the title* of the first indorsee under the restrictive indorsement, and, *irrespective of the directions contained in the letters of transmittal,* plaintiff could only have the rights of *an agent or trustee* for the defendant (Morrell & Co.), clothed with authority to collect the checks. . . .

"Defendant (Morrell & Co.) had a right at any time to revoke the agency of plaintiff for collection of the checks, and to avoid loss by collecting through other channels the accounts due from the makers of the checks. Had the checks been collected through the medium of the banks, and the money had reached the Sioux Falls Nat. Bank, the *relation of debtor and creditor* between the bank and defendant (Morrell & Co.) would *then,* and not *until then,* have arisen."

In 3 R. C. L., p. 635, sec. 264, it is said (italics ours):

"As heretofore shown where a bank, when hopelessly insolvent, receives a general deposit, it commits a fraud upon its customer, and the latter may rescind the transaction and follow the money into the hands of the receiver of the bank. It is upon this principle that if a collection has not been completed *before* the collecting bank becomes insolvent, any money *thereafter received* is the property of the principal, and no change of the relation of principal and agent to that of creditor and debtor can be effected after the insolvency of the bank. (Citing *St. Louis & S. F. Ry. Co. v. Johnston,* 133 U. S. 566; *Manufacturers' Nat. Bank v. Continental Bank,* 148 Mass. 553.) And so

where paper sent to a bank for collection is not paid before the insolvency of the bank it remains, as against its assignee for the benefit of creditors or in bankruptcy, the property of the customer, and does not pass to the assignee or receiver; and if it is collected by the assignee or receiver he *is bound to account* to the customer therefor. (Citing *Commercial Bank v. Armstrong,* 148 U. S. 50; *National Butchers' & Drovers' Bank v. Hubbell,* 117 N. Y. 384; *Hyland v. Roe,* 111 Wis. 361.) So also one who sends a draft for collection to a bank, which, after being advised by another bank, to which it sends the draft for the same purpose, that it has been collected, credits him with the amount, and afterwards becomes insolvent without having received the proceeds, is entitled to such proceeds from the collecting bank, as against the creditors and receiver of the insolvent bank." (Citing *Armstrong v. National Bank of Boyertown,* 90 Ky. 431.)

In the concluding paragraph of their brief, counsel for the receiver of the Sheridan Bank make the following contention:

"We submit that no act necessary to an absolute completion of the agency took place after the auditor took possession of the bank; that all such acts took place before the auditor took possession; that the agency was therefore completed and fully performed before that event; that the relation of debtor and creditor existed between appellant and the bank when the auditor closed the bank and now exists; and that the order of the circuit court allowing appellant's claim as a general claim should be affirmed."

The argument in support of the contention is, in substance, as we understand it, that because of the agreements between the various banks involved in the transaction, the letters written by the Foreman Bank pertaining to its "reserve," the "Time Sched-

ule,'' the provisions of ''Regulation J'' of the Federal
Reserve Board, the terms of the deposit slip that ''all
items are credited or cashed subject to final payment
in cash or solvent credits,'' etc., it should be con-
sidered that the $25,000 in question reached the Sheri-
dan Bank on Saturday, June 6, 1931, and before the
bank was closed by the auditor, and that, hence, the
relationship of creditor and debtor as to said sum
existed between the Candy Co. and the Sheridan Bank
at the time of said closing. We cannot agree with the
contention or argument. It appears from the evidence
that the bill of exchange was not paid by the drawee
in *Kansas City* until about noon of that day; that on
that day the Federal Reserve Bank at Kansas City
*mailed* to the Federal Reserve Bank at Chicago a
letter of advice that the proceeds of the bill had ac-
tually been received; that neither this advice nor the
proceeds of the bill were received by the Federal Re-
serve Bank at Chicago, or by the Foreman Bank,
until some time on Monday, June 8, 1931, which was
after the auditor of public accounts had closed the
Sheridan Bank and had taken possession of its assets;
and that said proceeds *thereafter* became a part of
the assets of the closed Sheridan Bank in the hands
of its receiver, the appellee herein. Under the facts
disclosed, we are of the opinion that at the time the
receiver took possession of the assets of the Sheridan
Bank the relationship of creditor and debtor between
the Candy Co. and the Bank, as to said sum of $25,000,
did not exist. Furthermore, we do not think that
agreements between the various banks involved in this
transaction or the letters that passed between them,
relied upon by appellee, should be considered as bind-
ing upon the Candy Co., it not having had any notice
thereof or being a party thereto. (*Overman v. Ho-
boken City Bank*, 30 N. J. L. 61, 64; *Merchants Nat.*

*Bank v. National Bank,* 139 Mass. 513, 518; *Sneider v. Bank of Italy,* 184 Cal. 595, 599.)

For the reasons indicated the order or decree of the circuit court of June 16, 1932, is reversed, and the cause is remanded with directions that the court enter a decree directing the receiver of the Sheridan Trust & Savings Bank, out of the estate in his hands, to pay to the Martha Washington Candies Company, as a preferred claim, said sum of $25,000, together with its costs.

*Reversed and remanded with directions.*

Sullivan, P. J., and Scanlan, J., concur.