CAMPBELL *v.* LOVE, SUPERINTENDENT OF BANKS.

(Division A. Nov. 6, 1933.)

[150 So. 780. No. 30630.]

Ruth Campbell and Campbell & Campbell, all of Yazoo City, for appellant.

78

F. W. Bradshaw and Flowers, Brown & Hester, all of Jackson, for appellee.

**Cook, J.,** delivered the opinion of the court.

The appellant, Ruth Campbell, attorney for R. G. Fowler, was a codefendant with the appellee, J. S. Love, superintendent of banks, to a bill of interpleader filed by the Merchants' Bank & Trust Company of Jackson, Mississippi, asking the court to determine the respective rights of the appellant and appellee to a special deposit of one thousand five hundred ninety-eight dollars and forty cents held by it. The parties defendant filed answers to the bill setting up their respective claims to this deposit, and the appellant filed a cross-bill against the appellee claiming the deposit as a preference claim

against the assets of the Citizens' Bank & Trust Company, in liquidation. The court below entered a decree adjudging that the said deposit should be paid to the appellee for the benefit of the Citizens' Bank & Trust Company of Yazoo City, Mississippi, and denying the appellant's claim to a preference, and from this decree this appeal was prosecuted.

The facts disclosed by the record are, in substance, as follows: The appellant had on deposit in the Citizens' Bank & Trust Company of Yazoo City, Mississippi, the sum of one thousand six hundred dollars, and she drew a check for that sum and forwarded it to the Capital National Bank of Jackson, Mississippi, for deposit to her credit. This check was received by the Capital National Bank on December 18, 1930, was placed to the appellant's credit and forwarded direct to the Citizens' Bank & Trust Company for collection and remittance. The check was received by the Citizens' Bank & Trust Company on December 19th, and charged to the account of appellant. On the same day, the Citizens' Bank & Trust Company mailed its exchange for one thousand six hundred dollars, less a collection fee of one dollar and sixty cents, drawn on its correspondent, the Merchants' Bank & Trust Company of Jackson, Mississippi. This exchange was received by the Capital National Bank on Saturday, December 20, and, due to the fact that all banks in the city of Jackson close at noon on Saturday, it was not presented at the clearing house until Monday morning, December 22, 1930.

The check was received by the Merchants' Bank & Trust Company under the rules of the Jackson Clearing House at eight o'clock A. M., on Monday, December 22nd, which rules will be hereinafter stated. Sometime between eight and nine o'clock, and prior to its opening, the cashier of the Merchants' Bank & Trust Company received information that the Citizens' Bank & Trust Company was insolvent and would not again open for business. Between the hours of two and four o'clock

in the afternoon of the same day, the Merchants' Bank & Trust Company returned the check to the Capital National Bank, and demanded a refund of the amount thereof in accordance with the clearing house rules, and the amount was refunded to it. The Capital National Bank, in turn, charged the check back to the account of appellant, and indorsed the check, without recourse, to her. Thereafter the appellant sued the Capital National Bank to recover the amount of the check, on the ground of negligent delay in presenting it for collection, and was denied a recovery. Capital National Bank v. Campbell, 162 Miss. 43, 138 So. 367. When the conflicting claims of the appellant and the superintendent of banks in charge of the liquidation of the insolvent Citizens' Bank & Trust Company to the proceeds of the check arose, the Merchants' Bank & Trust Company set up the amount thereof as a special deposit, and filed the bill in this cause.

The rules established by the Jackson, Mississippi, Clearing House, of which all the banks in Jackson are members, as shown by the evidence and the finding of fact by the chancellor, are substantially as follows: One Jackson bank, having checks drawn on another, places these checks in an envelope with a slip on the outside showing the total amount of the checks inclosed therein. The envelopes are presented at the clearing house by the banks' runners or messengers at eight o'clock each morning, prior to the opening of the banks at nine o'clock. Each runner gives a due bill to the other for any balance owing on their respective clearings, as shown by the slips showing the total amount of the checks in the envelopes. After the banks open for business, each one issues to the other New Orleans exchange for the amount of any due bill that may have been issued by its runner. This settlement between the runners, however, is tentative only, and each bank has the right to compare the checks received in the clearing with the various accounts on its books, and, if any check is found to be bad, or

drawn without authority, or not a proper item to be paid, then the bank has the right, between the hours of two and four o'clock P. M., to return such check or item to the bank that had presented it, and secure a refund of the amount thereof.

It is agreed, in the record, that the check in question was handled in exact accordance with the rules of the clearing house by the Merchants' Bank & Trust Company and the Capital National Bank; that before it opened for business on the morning of December 22, 1930, the Merchants' Bank & Trust Company had notice that the Citizens' Bank & Trust Company would not open on that day, but was closed for liquidation, and that, at 1:28 P. M., on that day, it received a telegram from a state bank examiner advising that the said Citizens' Bank & Trust Company was closed for liquidation, and requesting a statement of the account of said bank with the Merchants' Bank & Trust Company.

Upon that phase of the case wherein it is contended that, under the facts, the appellant is entitled to recover the said sum of one thousand five hundred ninety-eight dollars and forty cents as a direct obligation of the Merchants' Bank & Trust Company to her, the decisive question is: Was there, in fact, a payment of said check when it was presented to said bank by the Capital National Bank? If so, the right of the appellant to this sum became thereby fixed, and the refunding of the amount by the Capital National Bank was unauthorized, and she is entitled to recover from the Merchants' Bank & Trust Company.

Prior to the adoption of the Negotiable Instruments Act, chapter 51, Code 1930 (section 2657 et seq.), the weight of authority was to the effect that an unaccepted check or draft, in the absence of exceptional circumstances, did not amount to an assignment in law or equity of any part of the drawer's deposit, while that act, section 2845, Code 1930, expressly provides that: ''A check of itself does not operate as an assignment of any part

of the funds to the credit of the drawer with the bank, and the bank is not liable to the holder, unless and until it accepts or certifies the check.'' Under the rules of the Jackson Clearing House, the adjustment of balances on the first presentation of checks at the clearing house is merely a tentative or provisional payment by the exchange of credits, and is not a payment of any particular check, and does not become so until the time within which the check may be returned has expired. When this tentative or provisional payment is made at the clearing house before banking hours, there is no opportunity to examine the items, verify signatures, compare the amounts with the drawer's account, and determine whether any check is, for any reason, not properly payable. When the checks are returned from the clearing house to the banks upon which they are respectively drawn, the latter have until the hour of four o'clock P. M., to return a check for any reason satisfactory to them. This rule of the clearing house is reasonable, and appears to be necessary to an orderly transaction of banking business in financial centers, and since, after receiving notice that the Citizens' Bank & Trust Company was in liquidation, the Merchants' Bank & Trust Company determined that the check was not properly payable, and elected to return it to the payee bank within the time it had a right to do so, we think it is clear that there was no payment of the check.

In the case at bar, the proof shows that the resolution of the board of directors of the Citizens' Bank & Trust Company formally placing it in the hands of the state banking department for liquidation was entered on the minutes of the board at 10:30 o'clock A. M., on the day the check was presented to the Merchants' Bank & Trust Company for payment; but that fact does not aid appellant's cause, for the reason that it is admitted that the latter bank received unofficial notice of the closing of the Citizens' Bank & Trust Company before nine o'clock A. M., on said date, and received official notice

before the expiration of the time within which the tentative payment would become final and binding on the Merchants' Bank & Trust Company. Neither is the result affected by the fact that the drawer of the check, Citizens' Bank & Trust Company, was not a member of the clearing house. The check was forwarded to a payee bank which was a member of the clearing house, and payment of the check is the only ground of recovery against the Merchants' Bank & Trust Company which is available to appellant. The fact is that the drawee bank refused payment of the check, and by so doing it did not incur liability to the payee or its indorsees.

The view herein expressed is supported by many cases from other jurisdictions. The case of Columbia-Knickerbocker Trust Company v. Miller, 215 N. Y. 191, 109 N. E. 179, 180, Ann. Cas. 1917A, 348, is frequently cited, and appears to be a leading case upon the question. That case involved facts, and rules of the clearing house, practically the same as those here involved. In that case, about noon, and several hours after the tentative settlement had been made through the clearing house, the drawee bank received notice from the drawers that they had been forced to suspend business, and thereupon the check was returned and a refund made. In discussing the questions involved, the court said:

''The appellant contends that the check was paid, and that, if it was not paid, it was not duly presented for payment. Doubtless, the adjustment of balances by the clearing house constitutes a sort of tentative or provisional payment, but that adjustment occurs without an opportunity to the members to examine the items, verify signatures, compare the amounts with the drawers' accounts, and the like, and regardless of whether the checks are good. The constitution of the association contemplates that the members will directly adjust between themselves claims arising from the return of checks. It thus appears that the question of payment is not, and cannot be, ultimately decided until the bank

upon which the check is drawn has had an opportunity at its banking house to examine the checks. . . . In truth, the City Bank refused to pay the check. Its refusal was acceded to by the National Bank of Commerce, which refunded the amount of the credit it had received for the check at the clearing house. As between the immediate parties to the transaction then there was plainly no payment, but, although claiming not to be bound by the constitution and rules of the Clearing House Association, the appellant contends that payment resulted perforce of them. . . . We agree with the contention of the defendant that he was not bound by the rules of the association to which he did not belong. Neither could he claim the benefit of them. See Merchants' National Bank v. National Bank of the Commonwealth, 139 Mass. 513, 2 N. E. 89. Concededly, the adjustment of the accounts at the clearing house is, at most, tentative and provisional, and subject to an examination by each member of the checks drawn upon it. Whether the City Bank had the right, under the rules of the association, as between it and the National Bank of Commerce, its comember, to return the check, is of no consequence. So far as the payee was concerned, it could refuse payment for any reason or no reason. It did, in fact, refuse payment, and its refusal was acceded to. It was of no concern to the defendant, an outsider, whether the rules of the association were violated or not. He was concerned only with the actual fact, and could neither be prejudiced by, nor gain an advantage from, the constitution and rules of the association.''

Among other cases somewhat similar in the facts involved, and holding to the same effect, are the following: Eastman Kodak Company v. National Park Bank (D. C.), 231 Fed. 320; Trustee in Bankruptcy v. Mercantile Trust & Deposit Company (D. C.), 3 Fed. (2d) 444; First National Bank v. National Park Bank, 181 App. Div. 103, 168 N. Y. Supp. 422; Hentz v. National City Bank, 159 App. Div. 743, 144 N. Y. Supp. 979;

German National Bank v. Farmers' Deposit National Bank, 118 Pa. 294, 12 Atl. 303; Sneider v. Bank of Italy, 184 Cal. 595, 194 Pac. 1021, 12 A. L. R. 993.

The appellant contends, however, that, if it is held that she is not entitled to recover from the Merchants' Bank & Trust Company, she is entitled to have the amount of the check in question paid out of the general assets the Citizens' Bank & Trust Company as a preference claim.

In support of this contention it is argued that, when the Capital National Bank forwarded her original check to the Citizens' Bank & Trust Company for collection and remittance, with instructions to "Deliver documents attached only on payment," it designated the latter bank as her agent to collect and remit the proceeds of the check, and that, when the Citizens' Bank & Trust Company issued its exchange on its Jackson correspondent for the amount of the check, the relation of debtor and creditor which had theretofore existed between her and said bank ended, and she is now entitled to a preference over the general creditors of the bank for the amount collected and held by the bank as her agent. We do not think there is any merit in this contention. The mere issuance of the check or exchange, the payment of which was properly refused, did not operate to end the relation of debtor and creditor which had theretofore existed between her and the bank, and did not amount to a collection of the proceeds of the check. Only payment of the check could transfer the proceeds thereof from the bank as debtor to the bank as agent, and, at the time the bank went into liquidation, it had no funds in its possession in the capacity of agent of the appellant. Therefore she has only a general claim against the assets of the said bank payable the same as other general creditors and depositors. The court below so held, and its decree will therefore be affirmed.

Affirmed.